IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DANA DON ZDROY, | ) | Civil No.: 3:14-cv-00901-JE |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————————— | ) | |

Michael Halliday
Halliday Law, P.C.
494 State Street, Suite 250
Salem, OR 97301

      Attorney for Plaintiff

Billy J. Williams, U.S. Attorney
Janice E. Hébert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Lisa Goldoftas
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

OPINION & ORDER- 1

JELDERKS, Magistrate Judge:

Dana D. Zdroy ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1381a seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act").

For the reasons that follow, the Commissioner's decision is affirmed.

## Procedural Background

Plaintiff filed an application for SSI in April 2010, alleging disability beginning April 13, 2008. Tr. 21, 139-64. Plaintiff's claims were denied initially and on reconsideration, and a hearing was held before administrative law judge ("ALJ") Timothy Mangrum on September 25, 2012. Tr. 39-60. ALJ Mangrum found Plaintiff not disabled in his decision issued December 27, 2012. Tr. 21-32. That decision became the final decision of the Commissioner on April 14, 2014, when the Appeals Council denied Plaintiff's request for review. Tr. 1-3. Plaintiff now appeals to this Court for review of the Commissioner's decision.

## Background

Born in 1963, Plaintiff was 45 years old on his alleged onset date. Plaintiff graduated from high school and attended at least four years of college. Tr. 182. Plaintiff has past relevant work as an accountant, accounting clerk, hotel night auditor, and parking lot attendant. Tr. 32, 183. Plaintiff alleges disability due to obsessive-compulsive disorder ("OCD"), depression, and anxiety. Tr. 181.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. The five step

OPINION & ORDER- 2

sequential inquiry is summarized below, as described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

<u>Step One.</u> The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

<u>Step Two.</u> The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

<u>Step Three.</u> Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

<u>Step Four.</u> The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

<u>Step Five.</u> The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds

OPINION & ORDER- 3

claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a VE, or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At Steps One through Four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. Id.

## The ALJ's Decision

At the first step of the disability analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 13, 2008, the alleged onset date.

At the second step, the ALJ found plaintiff had the following severe impairments: "depressive disorder; anxiety disorder; obsessive-compulsive disorder; and alcohol abuse, in reported remission." Tr. 23. The ALJ also noted the non-severe impairment of "hypertension." Tr. 24.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Id.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He found Plaintiff retained the capacity required to perform:

> [A] full range of work at all exertional levels but with the
> following nonexertional limitations: . . . occasional public
> interaction . . . [and] only occasional changes in a work setting.

Tr. 25. In reaching this conclusion, the ALJ found that Plaintiff's medically determinable

impairments could reasonably be expected to cause some of the symptoms Plaintiff alleged, but

that his statement concerning the intensity, persistence, and limiting effects of the symptoms

were not entirely credible.

At the fourth step of the disability analysis, the ALJ found Plaintiff could perform his

past relevant work as an accountant and accounting clerk. Tr. 32. Based on this finding, the ALJ

concluded Plaintiff was not disabled within the meaning of the Act. Id.

### **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66

F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the

burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and

bears the burden of establishing that a claimant can perform "other work" at Step Five of the

disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53

F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." <u>Andrews</u>, 53 F.3d at 1039-40.

<u>Discussion</u>

Plaintiff contends the ALJ erred in: (1) improperly evaluating medical opinion evidence; and (2) formulating an RFC which did not account for all of Plaintiff's functional impairments.

1. <u>Medical Opinion Evidence</u>

Plaintiff contends the ALJ erred in assessing the medical opinion evidence of a treating physician and an examining physician. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a

claimant's testimony, or inconsistency with a claimant's activities of daily living ("ADLs").

Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

A. Dr. Akalin

Plaintiff contends the ALJ failed to properly weigh the medical opinion evidence of treating physician Murat Akalin, M.D., who managed care of Plaintiff's psychiatric issues.[1] Dr. Akalin opined:

> [Plaintiff] has serious psychiatric illness which does impair his ability to work. I think he would have difficulty functioning in regular full-time work. The safety net of disability subsidy would benefit him. At the same time, I think he would benefit from continued work as he is able, and he is interested in this as well.

Tr. 313. The ALJ accorded the April 2010 opinion "little weight," finding it was internally inconsistent; inconsistent with Plaintiff's self-reports; and "not at all consistent with his objective findings and observations." Tr. 28, 312-13. Because Dr. Akalin's opinion is contradicted by that of state agency physician H. Amado, M.D., the specific-and-legitimate standard applies.

In support of the ALJ's finding that Dr. Akalin's opinion is internally inconsistent, the ALJ highlighted Dr. Akalin's opinion Plaintiff would have difficulty functioning in full-time work, while also finding he would benefit from continued work. Tr. 28. Further, despite the

---

[1] The parties agree that the ALJ erroneously indicated Peter Clark, M.D. treated Plaintiff for psychiatric issues. Pl.'s Br. 12; Def.'s Br. 6; see tr. 27-28, 30. Dr. Clark also treated Plaintiff, but chiefly for physical issues rather than psychiatry. See, e.g., tr. 314, 319, 321. Although the ALJ mistakenly indicated psychiatry chart notes were authored by Dr. Clark, the ALJ consistently cited to chart notes completed by Dr. Akalin. See Tr. 27-28, 30, 312-13, 315-17, 322-24, 325. As such, the error is immaterial to the weight accorded the psychiatry chart notes and medical opinion of Dr. Akalin. Plaintiff does not assign harmful error to the discrepancy, and regardless, the Court agrees with the Commissioner that the error is harmless, as Dr. Clark's actual chart notes are not material to the ultimate disability decision. See Pl.'s Br. 12; Def.'s Br. 6-7. Accordingly, where the ALJ mistakenly identified Dr. Clark rather than Dr. Alakin, the Court will properly attribute the source of the relevant medical evidence as Dr. Alakin in this Opinion.

OPINION & ORDER- 7

doctor's assessment, he reported Plaintiff was "pleasant, cooperative, in a good mood, and without evidence of excessive worry or compulsions." Tr. 28, 312. An internal inconsistency within a physician's report is a valid reason to accord the report diminished weight. Morgan v. Comm'r of Soc. Sec. Admin. 169 F.3d 595, 603 (9th Cir. 1999). While Plaintiff does not expressly address whether Dr. Alakin's opinion is internally inconsistent, he generally argues that the ALJ erroneously focused on Plaintiff's self-reports rather than the doctor's medical opinion. Pl.'s Br. 12. In any event, the ALJ's stated rationale is valid and supported by substantial evidence. Thus, even assuming other interpretations of the evidence are possible, the Court must defer to that of the ALJ. Batson, 359 F.3d at 1190.

The ALJ also found Dr. Alakin's opinion was inconsistent with Plaintiff's self-reports; specifically, that "he felt much better reducing his alcohol consumption, and his goal-directed statements about working." Tr. 28. An ALJ may reject a doctor's opinion when it is inconsistent with the doctor's own observations. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Alakin noted Plaintiff "feels much better. His insomnia has resolved. His anxiety has improved." Tr. 312. Further, as stated above, the doctor reported Plaintiff was "pleasant and cooperative . . . mood much better . . . affect euthymic . . . [t]hought content with no hopelessness or suicidal ideation, no grandiosity, no excessive worry, no psychosis . . . [d]enies significant obsession or compulsions . . . ." Id. The doctor also reported Plaintiff was "considering applying for jobs as a night auditor," and "he is interested" in continued work. Tr. 27-28, 312, 313. Although Plaintiff argues the ALJ impermissibly relied on his reported statements at the April 2010 visit rather than earlier statements and the doctor's opinion, the ALJ's finding is a rational interpretation of the evidence and supported by the record. Id. Moreover, Dr. Alakin's opinion that Plaintiff would "have difficulty functioning in regular full-

time work" is not binding on the ALJ with respect to the ultimate determination of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). As such, the ALJ did not err in according diminished weight to Dr. Alakin's medical opinion.

B. Dr. Slatick

Plaintiff also disputes the ALJ's assessment of the opinion of examining physician, Emil Slatick, Ph.D. Following a two-day examination in May 2011, Dr. Slatick opined, "it is unlikely that [Plaintiff] will be successful in academic, training, or employment endeavors at this time . . . [due to] his significant and persistent anxiety." Tr. 341. Dr. Slatick additionally assessed a GAF ["global assessment functioning"] score of 48. Id. The ALJ accorded "little weight" to the doctor's opinion and GAF score, finding them inconsistent with the objective findings and observations of the evaluation, and inconsistent with Plaintiff's self-reports. Tr. 30. Plaintiff contends the ALJ's rationales do not meet the specific-and-legitimate legal standard.

The ALJ noted that in the battery of tests taken as part of Dr. Slatick's examination, his verbal and full scale IQ tests were in the average range, his reading and math scores were in the high average range, and his written language composite score was within the average range. Tr. 29, 336-38. The ALJ recognized Dr. Slatick's finding that Plaintiff's intellectual functioning was "quite variable," but the doctor also indicated that Plaintiff's "intellectual functioning would not be expected to contribute to deficits in adaptive behaviors, including interpersonal, coping skills, communication, and daily living skills." Tr. 29, 337. The ALJ found Dr. Slatick's low GAF assessment, which was "indicative of an individual with serious symptoms or a serious impairment in social or occupational functioning," not consistent with the test results described above. Tr. 29-30. Even assuming other interpretations of the evidence are plausible, it was not irrational for the ALJ to conclude Dr. Slatick's opinion that Plaintiff's variable

OPINION & ORDER- 9

intellectual functioning would not contribute to deficits in adaptive behaviors was inconsistent with a GAF score of 48. Batson, 359 F.3d at 1190.

The ALJ further found the assessed GAF score inconsistent with Plaintiff's "cooperative behavior, presentation, and unguarded statements."[2] Tr. 30. Indeed, the ALJ's findings are supported by Dr. Slatick's report: Plaintiff was "outwardly cooperative"; "did not exhibit significant behavioral indications of problematic mood"; "stated that he believes he is typically happy"; indicated "he loves to read novels and enjoys watching movies, listening to music, and using the internet"; "sees friends on occasion and will go to bars to watch sports programs"; would "*like* to be skiing and traveling." Def.'s Br. 12; tr. 336-37 (emphasis in original). Similarly, the ALJ found Plaintiff's behavior and the aforementioned statements about his interests, goals, and activities inconsistent with Dr. Slatick's opinion that Plaintiff would have difficulty being self-sufficient and maintain employment due to his anxiety. Tr. 341. Indeed, Dr. Slatick expressed that he observed "no indication of problems with anxiety, obsession or compulsion or mood," which the ALJ found contrary to the self-reports described above and the information provided by his mother. Tr. 29, 339.

Based on the foregoing, it is evident the ALJ fulfilled his duty to "summarize the facts and conflicting evidence . . . stat[e] his interpretation thereof, and mak[e] findings." Magallanes

---

[2] The Commissioner argues Plaintiff waived any argument regarding the assessed GAF score because he failed to specifically address it in his brief. Def.'s Br. 12. In reviewing the record as a whole, however, the ALJ's decision does not draw clear distinctions between the reasons for discounting Dr. Slatick's GAF assessment and the reasons for discounting the doctor's opinion that Plaintiff is disabled. See tr. 29-30. Rather, both the doctor's conclusions as to the GAF score and employability, and the ALJ's reasons for rejecting them, substantially overlap and are intertwined. As such, although Plaintiff did not specifically argue in support of the GAF score, the Court interprets Plaintiff's arguments in support of Dr. Slatick's opinion to include the GAF assessment, and therefore addresses the issue here.

v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Moreover, the ALJ's inferences were reasonable and are supported by the record. Batson, 359 F.3d at 1193.

Plaintiff argues the ALJ erred in finding internal inconsistency because Dr. Slatick "earlier in his evaluation recommended therapy and medication," but later opined that Plaintiff "should apply for [DIB] in order to receive mental health and financial services." Pl.'s Br. 11; tr. 29. Plaintiff contends the ALJ "apparently believes these two recommendations are inconsistent . . . [but] [c]learly, they are not." Pl.'s Br. 11. It is unclear the significance the ALJ accorded the particular statement, though it appears to be cited in support of the ALJ's finding of internal inconsistencies in Dr. Slatick's report. See tr. 29. The Court agrees that Dr. Slatnick's two recommendations are not mutually exclusive, and to the extent the ALJ found otherwise, it was not a reasonable interpretation of the record. Nevertheless, because the ALJ provided several other valid reasons for discounting Dr. Slatick's opinion – and particularly other valid reasons for finding the opinion internally inconsistent – any error was harmless. See Tackett, 180 F.3d at 1098 (where the evidence reasonably supports the ALJ's decision, the Court may not substitute its own judgment) (citation omitted).

Plaintiff further asserts the ALJ erred by failing to consider how the opinion of vocational rehabilitation counselor Sabrina Cunliffe suggests Dr. Slatnick's observations that Plaintiff was cooperative, apparently interested in activities with others, and wished to ski and travel, does not contradict the doctor's opinion that Plaintiff's anxiety is debilitating. Pl.'s Br. 8, 11. In other words, Plaintiff argues that his relatively positive and optimistic clinical presentation belies severely impaired functionality due to anxiety. See id. However, Plaintiff's premise is undermined by the ALJ's valid rejection of Ms. Cunliffe's opinion.

As a vocational rehabilitation counselor, Ms. Cunliffe is considered an "other source" under the Act, whose testimony the ALJ may reject so long as reasons germane to her are proffered. 20 C.F.R. § 404.1513(d); <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012). Ms. Cunliffe submitted a letter "in support of [Plaintiff's] application" for benefits, opining Plaintiff was "unable to move toward employment without some sort of financial safety net." Tr. 248. Ms. Cunliffe stated that Plaintiff "has not been able to set realistic goals for himself, or able to evaluate his own progress toward setting those goals." <u>Id.</u> The ALJ considered Ms. Cunliffe's letter, but rejected her opinion for two reasons: (1) he considered her opinion as advocating for a disability determination, and (2) none of Ms. Cunliffe's records were included in the record, so there was no objective evidence substantiating her opinion. Tr. 31. Either of these reasons alone would suffice for rejecting Ms. Cunliffe's opinion, as each is reasonably supported in the record and germane to her. <u>See, e.g.</u>, <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (ALJ permissibly rejected a lay witness opinion that a claimant was unable to work because it was not adequately supported) (citation omitted). Thus, because Ms. Cunliffe's opinion was properly rejected, Plaintiff's argument is unavailing.

In sum, the ALJ provided legally sufficient rationales, based on substantial evidence in the record, for discounting the medical opinion evidence of Drs. Akalin and Slatick. The ALJ's findings are affirmed.

## 2. <u>RFC Formulation</u>

Plaintiff argues the ALJ's RFC formulation does not comport with his combined mental limitations as alleged, and additionally, that the ALJ failed to abide Social Security Rulings ("SSR") 85-16 and 96-8p. <u>See</u> Pl.'s Br. 5-9; SSR 85-16, <u>available at</u> 1985 WL 56855; SSR 96-8p, <u>available at</u> 1996 WL 374184. The RFC is the most that a claimant can do despite any

functional limitations. See 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including a claimant's testimony. SSR 96-8p. Only limitations supported by substantial evidence must be incorporated into the RFC. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Similarly, an ALJ need include only credible limitations in questions to the VE. Batson, 359 F.3d at 1197.

Plaintiff argues the ALJ "failed to show how [his] OCD behaviors similar to that of checking/rechecking his work and whether doors are locked or the stove is turned off would affect his ability to sustain gainful employment." Pl.'s Br. 5. Plaintiff's assertion is based on his own testimony during the administrative hearing. See tr. 43-45. However, the ALJ found that Plaintiff was not completely credible regarding allegations that his OCD behaviors prevent him from completing tasks. For example, although Plaintiff initially testified he stopped taking online courses because he could not finish assignments, when pressed he indicated he stopped taking the courses in order to pursue employment. Tr. 27, 49. Similarly, although Plaintiff initially stated he had problems getting reports finished as a parking attendant, he ultimately lost his job when he was laid-off due to the recession. Tr. 48-49. Further, during the visit with Dr. Akalin in April 2010, Plaintiff "denied significant obsessions or compulsions . . . ." Tr. 28, 312. Likewise, Dr. Slatick observed "no indication of problems with anxiety, obsession or compulsion" despite Plaintiff's self-reports. Tr. 29.

The ALJ therefore found Plaintiff's allegations regarding OCD symptoms not fully credible because they were inconsistent with his prior statements and with evidence in the record provided by Drs. Akalin and Slatick. Both reasons are valid to discredit Plaintiff's OCD symptom allegations; therefore, the ALJ was not compelled to include functional limitations

arising from the discredited symptom allegations in the RFC. See SSR 16-3p available at 2016 WL 1119029 at *8-9; SSR 96-8p available at 1996 WL 374184; Osenbrock, 240 F.3d at 1164-65; Batson, 359 F.3d at 1197.[3]

Plaintiff also contends the ALJ "failed to show how or account for Plaintiff's anxiety, panic attacks, depression, and fatigue that keep him from wanting to get up and get going some days and would cause him to be absent from work frequently." Pl.'s Br. 5; tr. 45. However, the ALJ is not required to simply accept every allegation of non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). Further, while Plaintiff submits he "would be absent from work frequently," he does not contest the ALJ's finding that his credibility regarding his limitations in maintaining employment was diminished, and therefore waives any argument. Tr. 27; Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994). Even assuming the argument was not waived, the ALJ noted Plaintiff was on time to both of his consultative examinations with Dr. Slatick, and that Plaintiff himself "denied significant problems with job performance." Tr. 27, 335-36. As such, Plaintiff's argument is without merit.

---

[3] The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. See SSR 16-39, available at 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's October 2014 decision was issued more than one year before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling or whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve this issue. Moreover, Plaintiff does not contest the ALJ's credibility finding, and therefore waives any argument. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003).

Plaintiff invokes SSR 85-16, <u>available at</u> 1985 WL 56855, providing a brief summary of SSR's explanation of how paranoid tendencies may affect work relationships. Pl.'s Br. 5-6. However, Plaintiff does not articulate an argument on the issue, and regardless, the record does not reflect, nor does Plaintiff allege, limitations due to paranoid tendencies. Similarly, Plaintiff contends the ALJ "failed to comply" with SSR 85-15, <u>available at</u> 1985 WL 56857. However, Plaintiff does not explain how the SSR applies to the facts of his case; instead merely stating his interpretation of the rule: "[A]ny impairment related limitation created by an individual's response to the demands of work . . . must be reflected in the RFC statement." Pl.'s Br. 8. Plaintiff does not, however, articulate what impairment-related limitation created by his response to the demands of work was omitted from the RFC. Therefore, the Court has no basis to disturb the ALJ's finding.

Further, Plaintiff quotes a portion of SSR 96-8p, <u>available at</u> 1996 WL 374184, which describes the requirement that the ALJ provide a narrative discussion in support of the RFC assessment. Pl.'s Br. 8. Again, Plaintiff does not articulate an argument, but to the extent Plaintiff alleges the ALJ did not provide a narrative discussion, the argument nevertheless fails, as the ALJ dedicated more than five full pages to his narrative discussion, whichprovided sufficient specificity and evidentiary support to uphold its various findings. <u>See</u> tr. 25-31.

Plaintiff also summarizes findings by Dr. Slatnick and Ms. Cunliffe, which, as explained at length above, were properly discredited by the ALJ. <u>See</u> Pl.'s Br. 6-7. Again, the ALJ is not required to include in the RFC limitations from properly discounted opinion evidence. <u>Batson</u>, 359 F.3d at 1197.

Finally, Plaintiff contends the ALJ committed error by according "significant weight" to state agency medical consultant Dr. H. Amado, without specifically identifying the "records and

evaluations" the ALJ felt were consistent with the doctor's opinion. Pl.'s Br. 8; see tr. 28. Plaintiff does not provide support for the contention that the ALJ must provide specific and legitimate reasons for *accepting* the opinion of a state agency medical consultant, nor is the Court aware of any such authority. Rather, the applicable legal standard is the ALJ must provide an adequate explanation regarding why a medical opinion was *rejected*. Lester, 81 F.3d at 830. Although the opinion of a non-examining physician does not alone constitute substantial evidence that justifies the rejection of a treating physician, here the ALJ provided several other reasons – described supra – for rejecting the opinions of the treating and examining physicians. Tr. 27-31; see Morgan, 169 F.3d at 602. Because the ALJ properly discounted the opinions of Drs. Akalin and Slatick, and Ms. Cunliffe, he was within his authority to accept instead the limitations set forth by Dr. Amado. Tommasetti, 533 F.3d at 1041 (the ALJ is the final arbiter in resolving conflicts and ambiguities in the medical record); see also Batson, 359 F.3d at 1197 (ALJ is not required to include properly discredited functional limitation allegations in the RFC).

Further, the ALJ specifically indicated Dr. Amado's opinion that Plaintiff "retained the ability to perform at least detailed and semi-skilled activity" was consistent with "routine treatment records . . . objective observations from subsequent evaluations . . . and [Plaintiff's] goal-directed statements regarding future employment." Tr. 28. Thus, the ALJ adequately resolved the inconsistencies between the medical opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 755. The ALJ's finding is therefore upheld.

3. Request for Remand

OPINION & ORDER- 16

Plaintiff argues that this case be remanded for further proceedings or an award of benefits. Pl.'s Br. 13. However, because the ALJ's decision is free of harmful legal error and supported by substantial evidence, the Commissioner's ultimate decision is affirmed. See, e.g., Burch, 400 F.3d at 679.

## Conclusion

Because it is based on the proper legal standards and supported by substantial evidence, the Commissioner's ultimate decision is AFFIRMED.

DATED this  7th  day of July, 2016.

　

 /s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge

OPINION & ORDER- 17